IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHRISTOPHER SUDDUTH, <br><br> Plaintiff, <br><br> vs. <br><br> EXXON MOBIL CORPORATION, and TEXAS OUTHOUSE, INC., <br><br> Defendants. | Case No.: <br><br> Judge: <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Christopher Sudduth ("Plaintiff" or "Mr. Sudduth"), brings this action against Defendants Exxon Mobil Corporation ("Exxon") and Texas Outhouse, Inc. ("Texas Outhouse") (together, "Defendants") for their discriminatory employment practices, pursuant to 42 U.S.C. § 1981. Plaintiff makes the following allegations upon personal knowledge as to his own acts, upon information and belief, and upon his attorneys' investigation as to all other matters, and alleges as follows:

**NATURE OF THE ACTION**

1. Mr. Sudduth is a 35-year-old Black man who worked at Exxon's Baytown facility in Baytown Texas between 2013 and 2020[1]. Exxon created and tolerated a racially hostile working environment, within which Mr. Sudduth experienced verbal harassment (being called "nigger," "silverback"), saw racist graffiti in the portable restroom facilities (such as "nigga" and "go back to Africa"), and was even urinated on while servicing the portable restroom facility by an Exxon employee or worker under the control of Exxon. Mr. Sudduth was routinely threatened with

---

[1] Mr. Sudduth was assigned by Texas Outhouse to work at Exxon's facility and was jointly employed by Defendants.

termination and with the cancelling of the contract when he complained of the racist conduct at the Exxon Facility.

2.      Plaintiff brings this complaint for injunctive relief, including changed employment practices, and damages pursuant to 42 U.S.C. § 1981 ("Section 1981"), alleging intentional racial discrimination in the making and enforcement of contracts.

## PARTIES

3.      Plaintiff is a Black man and a citizen of the State of Texas. When the events that gave rise to this action occurred, Plaintiff was jointly employed by Exxon and Texas Outhouse, Inc., an entity that had a contractual relationship with Exxon.

4.      Under the contract, Plaintiff was engaged to clean and maintain the portable restroom facilities at Exxon's Baytown Refinery.

5.      Defendant Exxon is a corporate entity based in the State of New Jersey. Exxon's registered agent is Corporation Service Company D/B/A CSC-Lawyers Incorporated, with a registered office located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

6.      Defendant Texas Outhouse, Inc. is a corporate entity based in the State of Texas. Texas Outhouse's registered agent is Paul R Carl, with a registered office located at 950 McCarty Street Houston, Texas 77029.

7.      At all times pertinent hereto, Exxon operated the Baytown facility and contracted with Texas Outhouse, Inc. for portable restroom facilities maintenance services.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States, specifically, Section 1981. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1343.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Harris County, Texas, which is situated within this judicial district.

## FACTUAL ALLEGATIONS

### A. *Plaintiff's Employment at the Baytown Facility*

10. Exxon founded its Baytown Refinery in 1919. In 1940, it added a Chemical Plant to its Baytown operations, which are presently located on approximately 3,400 acres along the Houston Ship Channel, about 25 miles east of Houston, Texas ("Baytown facility").[2] Today, in addition to the refinery and chemical plant, the Baytown facility also includes Exxon's Baytown Olefins Plant, the Mont Belvieu Plastics Plant, and the Baytown Technology and Engineering Complex.[3]

11. In September of 2013, Texas Outhouse employees began working at the Baytown facility, pursuant to a contract between Texas Outhouse and Exxon, who jointly employed Mr. Sudduth and other workers at the facility.

12. On or around September 2013, Mr. Sudduth began working at the Baytown facility servicing and maintaining portable restroom facilities or "port-a-cans". In his role, Mr. Sudduth worked within each part of the facility, including the Refinery, Chemical Plant, Plastics Plant, Olefins Plant, and Technology and Engineering Complex.

13. Exxon was one of Texas Outhouse's most important relationships and was often lauded as a million-dollar contract because of the sheer size of the facility and the nearly 1000 portable restroom units in the Baytown Facility.

---

[2] Exxon Mobil, *Baytown Operations,* https://corporate.exxonmobil.com/locations/united-states/baytown-operations (last visited Nov. 30, 2023).
[3] *Id*.

14. Upon arrival to work each day, Mr. Sudduth used his badge to enter the facility. He then met with Paul (last name unknown), an Exxon Dock Manager, who assigned Mr. Sudduth his work for the day.

15. Exxon used its own internal forms, including a "DHR" sheet, to enumerate all of the approximately 1000 port-a-can's that Plaintiff needed to service on any given day. Paul provided these specific instructions to Mr. Sudduth each day on Exxon's form.

16. During his daily meetings with Paul, Mr. Sudduth also was required to complete various fields on Exxon's DHR form, to Exxon's satisfaction. Only after completing these fields could Mr. Sudduth begin his work for the day.

17. In addition to the work that Exxon assigned Mr. Sudduth at the beginning of his shift, throughout the day, Exxon personnel instructed Mr. Sudduth to service additional port-a-cans that needed maintenance.

18. Plaintiff's primary responsibility was servicing port-o-cans, which required him to pump biological waste out of the port-a-can; add new blue disinfectant deodorizer, bleach down the inside, then spray the port-o-can down with water to rinse out the bleach; replace the toilet tissue; and repair any broken hardware such as toilet seats or paper dispensers.

19. Once a unit was serviced, Plaintiff was responsible for making a notation both on his DHR daily log and on the daily ledger affixed to the wall inside each port-a-can unit.

20. Mr. Sudduth understood that if he failed to properly service each of the cans assigned to him by Exxon, he would be terminated.

21. Exxon retained the right to terminate, at-will, the employment of Mr. Sudduth and other employees were assigned to the Baytown facility by Texas Outhouse. For example, on information and belief, Exxon terminated the employment of Billy (last name unknown), for

4

exceeding the speed limit in the Baytown Olefins Plant by an insignificant amount. Mr. Sudduth and other employees assigned to the facility by Texas Outhouse were also frequently told that their employment would be terminated by Exxon if they did not comply with Exxon's instructions, or if they complained about discrimination.

22. In addition to assigning Mr. Sudduth his work, Paul also handled human resources concerns on behalf of Exxon.

### B. Pervasive Race Discrimination at the Baytown Facility

23. From the point that Plaintiff started working at the Baytown facility in 2013, until he stopped working at the facility in 2020, racial animus towards Mr. Sudduth and other Black workers was widespread and went unchecked, coming from White hourly workers, Supervisors and Managers, and others doing business at the facility. This harassment formed a part of a continuing violation, which continued until Ms. Sudduth's termination.

24. During the course of his employment, Plaintiff endured near-daily discriminatory conduct in the form of verbal harassment, including workplace use of the terms, "Nigger" and "Silverback", and experiencing written racial epithets.

25. Throughout his tenure at the Baytown facility, Plaintiff noticed racist graffiti inside of the port-a-can units, which appeared both on the walls of the units, as well as on the daily ledger affixed to the walls of the port-a-cans.

26. The graffiti included: "nigga nigga nigga," "GO BACK TO AFRICA NIGGER," "PUT MORE TISSUE ASSHOLE," and "SILVERBACK." Attached hereto as Exhibit A is a photograph taken by Mr. Sudduth at the facility, showing one example of the racist graffiti.

5

27. Plaintiff frequently complained to Exxon through Paul about the graffiti and, on information or belief, Paul neither escalated the complaints, nor took any action to discourage or further report the conduct.

28. Paul advised Plaintiff that further reporting would lead to his termination.

29. Plaintiff also frequently complained to Texas Outhouse, through its HR Department, regarding the racist graffiti.

30. On or around December 1, 2019, Plaintiff was servicing a port-a-can unit when a serious incident occurred. He was on his knees facing the toilet, when a White man with a red hardhat (which led Plaintiff to believe he was on Exxon's safety team) opened the door and began urinating on Plaintiff's feet, legs and back. It was a sunny day, and the port-o-can was well lit, making it implausible that the Exxon safety team employee had not seen Plaintiff. Although the image attached as Exhibit A was not taken on the date of the incident, it fairly demonstrates the layout and lighting of the port-o-can at issue.

31. Plaintiff turned to speak with the man, who he then recognized as someone who had subjected him to a prior racist incident.[4] The man responded "Sorry, I had to go real bad." Visibly upset, Plaintiff asked the man to apologize to him, and the man responded to Plaintiff by saying "What the fuck do you want me to do? I'll have you thrown out! I'm a supervisor!" The man then blamed Plaintiff for the incident, asking him why he didn't have safety gloves on. Of course, safety gloves would not have prevented the incident.

---

[4] Prior to this incident, Mr. Sudduth had approached a port-a-can to service it. Because the door was closed, he knocked on the door. The person inside (who Mr. Sudduth later learned was the same man who urinated on him), stated "occupied." When the mad exited the port-a-can he said to Mr. Sudduth, "You need to have some patience. Who the fuck do you think you are? I'll have your job." Plaintiff never witnessed this man speak this way to non-Back employees, and also firmly believes that the man would not have urinated on him, had he been White.

32. Plaintiff promptly complained about the incident to Exxon through Paul and another Exxon Manager, as well as to Exxon's Human Resource representative. He also complained about the incident to Texas Outhouse's HR representative.

33. On information and belief, Exxon's only efforts to investigate this incident were to ask the accused what had happened. Exxon informed Mr. Sudduth that its employee stated that he had not seen Plaintiff. This excuse was illogical as the incident occurred in a standard size port-a-can that could fit one to two people at a maximum, which was well-lit, as described above. *See* Exhibit A.

34. The unnamed Exxon Manager who relayed this excuse to Plaintiff criticized Plaintiff for not blocking off the unit he was servicing with yellow caution tape. Exxon did not have a policy requiring the use of caution tape, and no manager or supervisor had ever suggested to Plaintiff that he should use caution tape while servicing an individual unit prior to this occurrence. Even after this incident, neither Exxon nor Texas Outhouse changed their policy or practice to require the use of caution tape, nor did other company ever provide caution tape for employee use.

35. Shortly after this incident, one day Plaintiff used yellow caution tape, which he purchased with his own funds, to block off the units that he was cleaning, consistent with Exxon's instructions, when two White men came into the unit that he was servicing and exposed their penises to Plaintiff and laughed at him.

36. Plaintiff again complained to Paul and unnamed Exxon Managers who laughed and ridiculed him, saying, "maybe they just like the attention of a Black guy." On information or belief, this complaint was neither escalated or investigated, nor was any remedial action taken. Plaintiff also reported this incident to Texas Outhouse.

37. In or around October of 2020, after having experienced ongoing racial harassment, realizing his complaints would not be addressed by Exxon or Texas Outhouse, and having his job threatened each time he complained, the conditions had become unbearable. After repeatedly being called racial slurs and seeing racial slurs and epithets in writing, Mr. Sudduth had experienced severe emotional distress. Accordingly, he was constructively discharged.

### CAUSE OF ACTION
### COUNT I
### 42 U.S.C. § 1981.
### Hostile Work Environment Harassment
### Against Exxon and Texas Outhouse

38. Plaintiff hereby incorporates by reference paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39. Plaintiff is a Black man.

40. Plaintiff was qualified for his position of employment with Exxon and Texas Outhouse and performed his job satisfactorily in accordance with the responsibilities assigned to him.

41. Texas Outhouse assigned Plaintiff to work at the Baytown facility pursuant to a contract with Exxon and Defendants jointly employed Plaintiff while he worked at the facility.

42. Texas outhouse is liable under Section 1981 as Plaintiff's employer.

43. Defendant Exxon is liable under Section 1981 as Plaintiff's joint employer.

44. Exxon is also liable under Section 1981 based on Exxon's discriminatory administration of and interference with a contract. *See Santiago v. YWCA of El Paso Found*, No. EP-14-CV-247-KC, 2014 WL 3672975, at *3–4 (W.D. Tex. July 24, 2014) ("However, § 1981 is nonetheless broader than Title VII in some respects. Notably, "[u]nlike Title VII ... 42 U.S.C. § 1981 does not limit claims only to statutory 'employers.').

45. While working at the Baytown facility, Plaintiff was subjected to harassment on the basis of his race. This included the incident where an Exxon employee urinated on Plaintiff; Exxon Managers engaging in race-based stereotyping and "jokes" after Plaintiff complained that Exxon employees exposed their genitalia to him; Plaintiff's job being threatened if he complained; Plaintiff being subjected to inappropriate racial language and/or "jokes" in the workplace, including racist graffiti and racial slurs, all of which interfered with Plaintiff's employment and resulted in his constructive discharge.

46. The harassment was unwelcomed and severe or pervasive.

47. Exxon and Texas Outhouse knew of the harassment because Plaintiff reported it to Exxon, including through Paul (last name unknown) and other Exxon Managers, Exxon's Human Resources representative, and other individuals jointly employed by Texas Outhouse and Exxon and assigned to the facility by Texas Outhouse.

48. Exxon and Texas Outhouse failed to properly investigate Plaintiff's complaints and failed to take appropriate remedial action.

49. The harassment affected a term, condition, or privilege of Plaintiff's employment. For example, Plaintiff was not able to complete his work in an environment free from racial animus and the targeted attacks that were allowed to go on at the Baytown facility.

50. The harassment complained of was routinely dismissed by Exxon and Texas Outhouse, who threatened to end Plaintiff's employment if he continued to complain.

51. Plaintiff was constructively discharged by Exxon and Texas Outhouse, as a result of the racially hostile working environment.

52. As a direct and proximate result of Exxon and Texas Outhouse's unlawful discriminatory conduct and harassment in violation of § 1981, Plaintiff has suffered, and continues

to suffer, monetary and/or economic harm, including, but not limited to, loss of past and future income as well as compensation and benefits, for which he is entitled to an award of damages.

53. As a direct and proximate result of Exxon and Texas Outhouse's unlawful discriminatory conduct and harassment in violation of § 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of damages and other relief.

54. Exxon and Texas Outhouse acted with reckless indifference in committing their unlawful and discriminatory actions, which constitute malicious, willful, and wanton violations of § 1981, for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order which will:

A. Declare the conduct engaged in by Defendants to be in violation of Plaintiff's rights under federal law;

B. Permanently enjoin and restrain Defendants from engaging in the unlawful employment practices described herein and be required to implement appropriate improvements to its employment policies and practices;

C. Award Plaintiff compensatory damages against Defendants;

D. Award Plaintiff punitive damages against Defendants;

E. Award Plaintiff damages for emotional distress against Defendants;

F. Award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law;

G.    Award Plaintiff his reasonable attorneys' fees and expenses;

H.    Award Plaintiff such other and further relief, including equitable relief, that this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all counts and claims triable by jury as raised by this Complaint.

DATED:  December 1, 2023

Respectfully Submitted,

**THE COCHRAN FIRM - DALLAS, PLLC**

*/s/ BRYAN D. POPE*
Bryan D. Pope
State Bar No. 00788213
bpope@cochrantexas.com
Larry F. Taylor
State Bar No.  24071156
ltaylor@cochrantexas.com
1825 Market Center Blvd., Suite 500
Dallas, Texas  75207
(214) 651-4260 (Telephone)
(214) 651-4261 (Facsimile)
For E-Service please include
twickstrom@cochrantexas.com

**BEN CRUMP LAW, PLLC**
Bejamin Crump*
Nabeha Shaer*
122 South Calhoun Street
Tallahassee, Florida 32301
Telephone: (800) 691-7111
ben@bencrump.com
nabeha@bencrump.com

**DiCELLO LEVITT LLP**
Diandra S. Debrosse Zimmermann*
505 Twentieth Street North, Suite 1500
Birmingham, Alabama 35203
Telephone: (205) 855-5700

fu@dicellolevitt.com

**DiCELLO LEVITT LLP**
Laura Reasons*
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
lreasons@dicellolevitt.com

**DICELLO LEVITT LLP**
Kenneth P. Abbarno*
Joe Fouche III*
8160 Norton Parkway, Third Floor
Mentor, Ohio 44060
Telephone: (440) 953-8888
kabbarno@dicellolevitt.com
jfouche@dicellolevitt.com

Counsel for Plaintiff

* To Seek Admission *Pro Hac Vice*